Filed 2/22/23  P. v. Marks CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ZAVIER MICHAEL MARKS,<br><br>    Defendant and Appellant. | D080984<br><br><br>(Super. Ct. No. FSB17002569) |

APPEAL from an order of the Superior Court of San Bernardino County, Michael A. Knish, Judge.  Affirmed.

Shiela Lavery O'Connor, under appointment by the Court of Appeal, for Defendant and Appellant.

Zavier Michael Marks appeals from an order denying his petition to vacate his attempted murder conviction under Penal Code section 1172.6.[1]

---

[1]  Marks brought his petition under former section 1170.95, which was amended effective January 1, 2022, and then renumbered as section 1172.6 without substantive change on June 30, 2022.  (See Stats. 2022, ch. 58, § 10, (Assem. Bill No. 200).)  We refer to the subject statute by its current number throughout this opinion.  All further statutory references are to the Penal Code.

His appointed appellate counsel filed an opening brief indicating that she had been unable to identify any arguable issues for reversal on appeal. After the Supreme Court clarified the procedures for such no-issue appeals in *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), we issued a *Delgadillo* notice to Marks notifying him of his right to file a supplemental brief. In response, Marks filed a letter identifying three issues. We now conclude that Marks has failed to identify any arguably meritorious issues. Accordingly, we affirm the order denying his section 1172.6 petition.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Facts of Offense*

We summarize the underlying facts based on our prior decision in Marks's direct appeal from his conviction. (*People v. Henderson* (2020) 46 Cal.App.5th 533 (*Henderson*).)

At about 2:15 a.m. on March 26, 2017, three men near a vehicle within an apartment complex asked the victim where he was from and whether he was a "Blood or a Crip." After the victim said he was from Watts, they fired multiple rounds of bullets at him, hitting the victim's hip after he dropped to the ground and tried to crawl away, and also hitting occupied apartments. A security guard called police and gave them the license plate number of the car when it drove out of the complex. An officer found 24 expended bullet casings in the area. (*Henderson, supra*, 46 Cal.App.5th at p. 540.)

At about 10:00 that morning, an officer stopped the vehicle involved in the shooting, finding Ian Henderson in the driver's seat and Marks, another man, and a woman as passengers. Police searched the vehicle and found two loaded nine-millimeter handguns, a large capacity magazine for one of the guns, and a cell phone. An additional search of the car revealed a third loaded handgun, which was later determined by a firearms examiner to have

been the gun that fired eight of the expended bullet casings found at the crime scene. The examiner determined one of the 24 expended bullet casings was fired from one of the other two guns found in the car. Federal officers performed an analysis on Henderson's phone and found it had activated three cell phone towers in the San Bernardino area at about 2:17 a.m., about 1.5 miles from the crime scene. (*Henderson, supra,* 46 Cal.App.5th at p. 541.)

According to Edwurd Sanders, who was charged as a codefendant with Henderson and Marks, the three of them drove to a strip club that morning, drank alcohol and left at about 1:45 a.m. (*Henderson, supra,* 46 Cal.App.5th at p. 541.)

B. *The Criminal Proceedings*

Marks, Henderson, and Sanders were charged with premeditated attempted murder (§§ 664/187, subd. (a)) and shooting at an inhabited dwelling (§ 246). The information also alleged gang enhancements (§ 186.22, subd. (b)(1)) and firearm enhancements (§§ 12022.53, subds. (b), (c), (d), (e)(1)), including allegations that a principal personally used and discharged a firearm and that Marks and Sanders (but not Henderson) personally used and personally and intentionally discharged a firearm in the commission of the offenses. Finally, the information alleged that Marks had suffered a prior conviction of a serious felony.

In a jury trial, the court instructed the jury with CALCRIM Nos. 400 and 401 on direct aiding and abetting liability. CALCRIM No. 401 stated in relevant part:

To prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that:

1. The perpetrator committed the crime;

2. The defendant knew that the perpetrator intended to commit the crime;

3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime;

AND

4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime.

Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

The court also instructed the jury with CALCRIM No. 402 on the natural and probable consequences doctrine for the charge of shooting at an inhabited dwelling. This instruction stated in relevant part:

The defendants are charged in Count 1 with Attempted Murder and in Count 2 with Shooting at an Inhabited Dwelling.

You must first decide whether each defendant is guilty of Attempted Murder. If you find a defendant is guilty of this crime, you must then decide whether he is guilty of Shooting at an Inhabited Dwelling.

Under certain circumstances, a person who is guilty of one crime may also be guilty of other crimes that were committed at the same time.

4

To prove that the defendant is guilty of Shooting at an Inhabited Dwelling, the People must prove that:

1. The defendant is guilty of Attempted Murder;

2. During the commission of Attempted Murder, a coparticipant in that Attempted Murder committed the crime of Shooting at an Inhabited Dwelling;

AND

3. Under all of the circumstances, a reasonable person in the defendant's position would have know that the commission of Shooting at an Inhabited Dwelling was a natural and probable consequence of the commission of the Attempted Murder.

A *coparticipant* in a crime is the perpetrator or anyone who aided and abetted the perpetrator. It does not include a victim or innocent bystander.

A *natural and probable consequence* is one that a reasonable person would know is likely to happen if nothing unusual intervenes. In deciding whether a consequence is natural and probable, consider all of the circumstances established by the evidence.

The jury convicted Marks and Henderson as charged of premeditated attempted murder and shooting at an inhabited dwelling. However, the jury found the gang allegations not true and made no findings as to the firearm enhancements, which were stricken or dismissed by the court. The court found true the allegation that Marks had suffered a prior serious felony conviction. The jury could not reach a verdict as to Sanders, and the court declared a mistrial as to him. (*Henderson*, *supra*, 46 Cal.App.5th at p. 541.)

5

The court sentenced Marks to 14 years to life for the attempted murder, plus a consecutive term of five years for the prior serious felony. The court imposed a concurrent, 10-year sentence for the shooting at an inhabited dwelling.

Marks and Henderson appealed from the judgment. In March 2020, we generally affirmed the judgment, but vacated Marks's sentence and remanded for resentencing to permit the trial court to exercise its discretion whether to strike the prior serious felony enhancement under a new law that became effective while the appeal was pending. (*Henderson*, *supra*, 46 Cal.App.5th at pp. 560-561.) The appellate record does not include any information about the new sentence imposed on remand.

C. *Section 1172.6 Petition*

In January 2022, Marks filed a petition for resentencing under section 1172.6. The petition alleged that Marks was convicted of murder, attempted murder, or manslaughter on a theory of felony murder, natural and probable consequences, or imputed malice, and he could not presently be convicted of the offense under current law. After the court appointed counsel for Marks, his attorney filed a brief in support of the petition. The brief argued that Marks had made a prima facie showing under section 1172.6 because the jury did not find that he used a firearm during the commission of the attempted murder, it did not find that a principal was armed with a firearm, and it did not find that Marks was the shooter.

The People filed a brief in opposition arguing that Marks had failed to make a prima facie showing. The People also requested judicial notice of our opinion on direct appeal and the files and records from the Superior Court case. The People argued it was undisputed that Marks was not convicted of attempted murder under a natural and probable consequences theory,

6

because the version of CALCRIM No. 402 given at trial required the jury to find Marks guilty of attempted murder *before* applying the natural and probable consequences doctrine to assess Marks's guilt of shooting at an inhabited dwelling.

The trial court held a hearing on the petition. At the outset, the trial court noted that the natural and probable consequences instruction given at trial was limited to the charge of shooting at an inhabited dwelling, not attempted murder. The court stated: "[T]he attempted murder wasn't based on the natural and probable consequence. The other charge, the shooting at the house, was based on that."

Defense counsel did not dispute that "the jury was instructed not to consider [the natural and probable consequences doctrine] as to the attempted murder," but argued, "I have done this long enough to know that that is a very elegant point to 12 folks from the community to know that that instruction merely applies to a different count." Defense counsel argued "based on the fact that there was a natural-and-probable-consequence jury instruction, and based upon the fact that a jury did not convict him beyond a reasonable doubt of using a firearm, I would ask the Court to find that a prima-facie showing has been made."

In response, the prosecutor argued that the jury instruction given on natural and probable consequences was "very explicit the jury had to find the attempt murder first before they even used that instruction. . . . It's very clear which is the first starting crime and which is the resulting crime. And attempt murder is always the burden was, hey, we have to prove this first before you can even use this instruction; and based on that, he's out of the realm of relief. He cannot meet his prima facie, and it should be denied at this stage."

7

After hearing the parties' arguments, the trial court denied the petition for resentencing, finding that "under current law, Mr. Marks . . . has not met a prima-facie case." Marks filed a timely notice of appeal.

D. *No-Issue Brief and Supplemental Brief*

Marks's appointed appellate counsel filed a no-issue brief under *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738. The brief conceded: "As to the attempted murder count, Marks' original jury was instructed solely on aiding and abetting; a natural and probable consequences instruction was given, but it was limited to the count related to the shooting at an inhabited building, and not the attempted murder count." The brief identified the following potential issue: "Whether the trial court erred when it concluded that Marks did not show a prima facie case for relief and denied Marks's Motion for Re-sentencing under section 1172.6?"

We issued an order giving Marks an opportunity to file his own supplemental brief. After the Supreme Court's December 2022 decision in *Delgadillo*, we issued another notice advising him that the appeal was subject to the procedures set forth in *Delgadillo*, giving him 30 days to file a supplemental brief, and stating that the appeal would be subject to dismissal if no supplemental brief was filed.

In response, Marks submitted a letter to this court identifying the following issues: "1. My attorney in the trial court (David Goldstein) was ineffective by not arguing the malice aforethought imputed to a person based solely on that person's participation in the crime. [¶] 2. The trial court instructed the jury with the natural and probable consequences doctrine in which it stated that it only applied to Count [*sic*] yet it was one course of action. [¶] 3. The trial court also stated that I was convicted as an [*sic*] principal & aider and abettor."

8

DISCUSSION

In *Delgadillo*, our Supreme Court recently clarified the procedures required in an appeal from the denial of a section 1172.6 petition where counsel finds no arguable issues. In such circumstances, "(1) counsel should file a brief informing the court of that determination, including a concise recitation of the facts bearing on the denial of the petition; and (2) the court should send, with a copy of counsel's brief, notice to the defendant, informing the defendant of the right to file a supplemental letter or brief and that if no letter or brief is filed within 30 days, the court may dismiss the matter." (*Delgadillo*, *supra*, 14 Cal.5th at pp. 231-232.) "If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion. The filing of a supplemental brief or letter does not compel an independent review of the entire record to identify unraised issues." (*Id*. at p. 232.) "If the defendant does not file a supplemental brief or letter, the Court of Appeal may dismiss the appeal as abandoned." (*Ibid*.)

We have followed the procedures set forth in *Delgadillo*—and Marks responded to our *Delgadillo* notice by filing a letter identifying potential issues. Under *Delgadillo*, we must therefore evaluate the issues presented by Marks in this opinion. (*Delgadillo*, *supra*, 14 Cal.5th at p. 232.)

Section 1172.6 allows those previously convicted of felony murder, or murder or attempted murder under the natural and probable consequences doctrine, or murder based on any other theory of imputed malice, to petition the court to have their convictions vacated and be resentenced on any remaining counts, if they could not presently be convicted of murder or attempted murder because of changes to the law made effective in January 2019. (§1172.6, subd. (a).) After appointment of counsel, the trial court is

9

permitted to examine the record of conviction to assess whether it refutes the petitioner's claim of eligibility. (*People v. Lewis* (2021) 11 Cal.5th 952, 970-972 (*Lewis*).) The court may deny the petition at the prima facie stage if the record of conviction discloses that the petitioner is ineligible for relief as a matter of law. (*Id.* at p. 971.)

We conclude that the trial court properly denied Marks's section 1172.6 petition at the prima facie stage, and the three issues he has identified do not have any arguable merit.

First, Marks was not deprived of effective assistance of counsel by his attorney's failure to argue that he was convicted of attempted murder on a theory of imputed malice. The only theory of *attempted* murder that is covered by section 1172.6 is "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [the statute "applies by its terms only to attempted murders based on the natural and probable consequences doctrine"].) Thus, Marks is not entitled to relief unless he was convicted of attempted murder on a natural and probable consequences theory—which his attorney argued below. Defense counsel therefore did not provide deficient representation by failing to argue that Marks was convicted on some other theory of imputed malice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-691.)

In any event, Marks has failed to demonstrate that he was in fact convicted on any such theory of imputed malice. The trial court instructed the jury that Marks could be convicted as either a perpetrator or an aider and abettor. The trial court gave CALCRIM Nos. 400 and 401 on direct aiding and abetting liability for the attempted murder. These instructions informed the jury that to convict Marks as an aider and abettor, the prosecution had to

10

prove that Marks knew the perpetrator intended to commit a killing, that he intended to aid and abet the perpetrator in committing the killing, and that he did aid and abet the perpetrator in committing the killing. (See *People v. Johnson* (2016) 62 Cal.4th 600, 640-641.) Thus, the direct aiding and abetting instructions did not allow the jury to convict Marks as an aider and abettor based "on the mental state of the actual shooter, rather than on [his] own mental state in aiding and abetting the killing." (*Id*. at p. 641.) The instructions correctly conveyed the principle that an aider and abettor's "mental state is her own; she is liable for her mens rea, not the other person's." (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118.) For this reason, Marks could not have been convicted of aiding and abetting the attempted murder on an imputed malice theory.

Second, Marks argues that even though the jury instructions only permitted the jury to apply the natural and probable consequences doctrine to the charge of shooting at an inhabited dwelling, not the charge of attempted murder, the crimes involved only "one course of action." But this does not alter the fact that the instructions simply did not permit the jury to convict Marks of "attempted murder under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) The version of CALCRIM No. 402 given at trial explicitly stated that the jury had to "first decide" whether Marks was guilty of attempted murder before it could then apply the natural and probable consequences doctrine to assess whether he was *also* guilty of shooting at an inhabited dwelling. Absent any contrary indication, we must presume that the jury understood and followed its instructions. (*People v. Cortes* (2022) 75 Cal.App.5th 198, 205-206.) Thus, the record demonstrates that Marks was not convicted of attempted murder on a natural and probable consequences theory.

11

Third, Marks notes that the trial court "also stated that I was convicted as an [*sic*] principal & aider and abettor." We are not certain what Marks is referring to here, as the trial court made no such statement at the section 1172.6 hearing. But even if it had, there would still be no error. Section 1172.6 does not make relief available to anyone who is convicted of attempted murder as a principal or an aider and abettor; it only grants relief to those convicted of attempted murder "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a).) Again, the record establishes that Marks was not convicted of attempted murder on this theory.

For all these reasons, the potential issue identified by Marks's appointed counsel also lacks arguable merit. Because the record shows that Marks was not convicted of attempted murder on any theory covered by section 1172.6, the trial court correctly ruled that Marks did not show a prima facie case for relief. (See *Lewis, supra,* 11 Cal.5th at pp. 970-972.)

## DISPOSITION

The order denying Marks's section 1172.6 petition is affirmed.

BUCHANAN, J.

WE CONCUR:


HUFFMAN, Acting P. J.


DO, J.

12